**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARGARET S. HITCHCOCK, | CASE NO. 4:16-cv-00378-JED-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Margaret S. Hitchcock ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

### I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount

of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

### A.    Procedural History

In June 2013, Plaintiff protectively filed a claim for disability insurance benefits and supplemental security income, alleging disability as of December 1, 2012. (Tr. 22). After an administrative hearing, an administrative law judge ("ALJ") issued a decision on November 13, 2014, finding Plaintiff not disabled. (Tr. 22-32). On April 19, 2016, the agency's appeals council denied Plaintiff's request for review, and this appeal followed. (Tr. 1-6).

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges seven errors: (1) the ALJ failed to include his own findings in the residual functional capacity ("RFC"); (2) the ALJ's mental RFC is unsupported by substantial evidence of record; (3) the ALJ's RFC as to Plaintiff's "severe" physical impairments of right wrist fracture and seizure disorder is unsupported by substantial evidence; (4) the ALJ's RFC is additionally unsupported as to Plaintiff's physical limitations; (5) the ALJ's credibility determination is unsupported by the substantial evidence; (6) the ALJ's step four determination is

3

unsupported by the substantial evidence; and (7) the Commissioner failed to sustain her burden at step five. (Pl. Br. at 1-2, Doc. 13).

A.      ALJ Findings and the RFC

1.      Mild Difficulties in Concentration, Persistence, or Pace

Plaintiff contends the ALJ erred in failing to include the findings of mild difficulties in maintaining concentration, persistence, or pace within the RFC. (Pl. Br. at 2). In the decision, the ALJ made the following findings when evaluating the mental health evidence in the record:

> The claimant saw Johna Smasal, Ph.D., for a consultative examination on August 22, 2013 … [she] denied a history of psychiatric diagnoses … [she] reported methamphetamine abuse that ended "last August." She lived independently and cared for herself and was able to drive. She was close to her mother and several friends and enjoyed playing with her dog, playing on the Wii, crocheting, playing bingo, and attending baseball games. The Montreal Cognitive Assessment (MoCA) assesses attention and concentration, executive functions, memory, language, visuo-constructional skills, conceptual thinking, calculations, and orientation. The claimant scored 12/30; however, Dr. Smasal found the claimant's effort on the MoCA to be poor. Therefore, Dr. Smasal found the obtained score may underestimate the claimant's true ability. The claimant's affect fell within normal limits. Her thought processes were linear and logical. Dr. Smasal's impressions were that the claimant is able to perform some work-related mental activities such as the ability to understand and remember. Her diagnostic impression was amphetamine abuse, reported to be in sustained full. The [ALJ] concurs with Dr. Smasal and give her impressions substantial weight.
>
> In making this finding, the [ALJ] has considered the four broad functional areas …
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant lives alone and takes care of pets and her own personal grooming, shops for her needs, cleans and prepares her own meals. The claimant is able to drive.
>
> The next functional area is social functioning. In this area, the claimant has no limitation. The claimant is able to get along with others, spends time with others every day and has no changes in her social activities since her conditions began. She also crochets and rides a bicycle. She enjoys playing on her Wii, playing bingo with other residents at her apartment complex and attending baseball games.
>
> The third functional area is concentration, persistence, or pace. In this area, the claimant has mild limitation. The claimant can follow instructions, handle a

savings account, use a checkbook, and doesn't need reminders for medications. She is able to understand and remember but has some difficulty with concentration.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration …

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are non-severe …

The claimant testified to memory loss, but there is no objective evidence in the claimant's medical records to support this impairment. Dr. Smasal found the claimant had the ability to remember.

(Tr. 25-26). Thus, the ALJ put forth the reasons and the resulting conclusions as to Plaintiff's mental health paragraph B analysis. Furthermore, from the record, the ALJ found Plaintiff had the RFC to perform:

medium work … the claimant can lift 50 pounds occasionally and 25 pounds frequently, stand / walk about 6 hours in an 8-hour work day, sit about 6 hours in an 8-hour work day, but should avoid hazards such as heights and open machinery.

(Tr. 26-27). The ALJ formulated the RFC from a review of the entire record. Plaintiff contends the ALJ did not include any mental limitations in the RFC. As the ALJ noted, at the consultative examination Plaintiff denied a history of psychiatric diagnoses. (Tr. 25). The ALJ concurred with Dr. Smasal's impression Plaintiff is able to perform some work-related mental activities such as the ability to understand and remember. Id. Furthermore, the ALJ noted Plaintiff's medically determinable mental impairments were non-severe as they cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation, which have been of extended duration in the fourth area.

A Western District of Oklahoma case outlined case law history of mental limitations identified at step two and the resulting RFC determination.

It is well-established that the mental limitations identified at steps two and three are not a residual functional capacity assessment. Wells, 727 F.3d at 1069. And Plaintiff fails "to identify a requirement that step three findings concerning the listings be incorporated into the RFC determination used in steps four and five." DeFalco–Miller v. Colvin, 520 Fed. Appx. 741, 747–48 (10th Cir. 2013) (unpublished);[2] see also Suttles v. Colvin, 543 Fed. Appx. 824, 827 (10th Cir. 2013) (rejecting claim that ALJ erred by omitting from the RFC assessment a mild limitation found at step two regarding concentration, persistence or pace and stating that the Tenth Circuit has "repeatedly held, albeit in unpublished opinions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps"). Indeed, Plaintiff cites no law to support her claim.

Mattocks v. Colvin, No. CIV-15-276-M, 2016 WL 2600464, at *6 (W.D. Okla. Apr. 15, 2016), report and recommendation adopted, No. CIV-15-276-M, 2016 WL 2343906 (W.D. Okla. May 3, 2016).

In a 2016 case from the Western District of Oklahoma, the plaintiff argued the ALJ omitted mental limitations in the RFC, despite finding mild limitations in concentration, persistence, and pace. The court found this was not error, as the ALJ properly relied on the medical expert, who testified the plaintiff did not have "any discrete mental impairments with mental limitations." See Mathis v. Colvin, 2016 WL 3920472, at *4 (W.D. Okla. July 15, 2016). Similarly, in this case, the ALJ relied on the state agency medical consultant, who found Plaintiff's alleged mental impairments were non-severe. (Tr. 29-30). Another recent case out of the District Court of Kansas addressed a similar instance of non-severe mental impairments and the resulting RFC.

> With regard to the mental limitations found by the state agency psychologists, and allegedly ignored by the ALJ, the court notes that the state agency psychologists found Plaintiff's mental impairments are not severe and the ALJ followed suit and accorded great weight to their opinions, particularly the reconsideration opinion. An impairment is not severe only if it does not have more than a minimal effect on a claimant's ability to do basic work activities. Williams, 844 F.2d at 751. In this light, both the ALJ and the state agency psychologists found that Plaintiff's mild mental limitations have only a minimal effect on her ability to

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

perform basic mental work activities, and Plaintiff does not point to record evidence
of functional mental limitations which were not included in the RFC assessed.

Hansel v. Berryhill, No. CV 16-1181-JWL, 2017 WL 1550241, at *6 (D. Kan. May 1, 2017). As

in Hansel, the ALJ in this case assessed great weight to the state agency medical consultants who

found Plaintiff's mental impairments to be non-severe. (Tr. 29-30). Since the mental impairments

were non-severe, they had no more than a minimal effect on work activities, and thus, the ALJ did

not need to include them in the RFC. Substantial evidence supports the ALJ's decision.

**B.      RFC and the Medical Opinions of Record**

**1.      ALJ Evaluation of Medical Opinions**

Plaintiff states the ALJ erred in giving great weight to the opinions of the state agency

physicians. (Pl. Br. at 2-3). Plaintiff states the physicians are only identified by their initials, which

makes it impossible to test their credentials. Id. at 3.

> State agency medical and psychological consultants are highly qualified
> physicians and psychologists who are experts in the evaluation of the medical issues
> in disability claims under the Act. Social Security Ruling 96–6p, 1996 WL 374180
> at *2 (SSA July 2, 1996). See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir.
> 2004), "[i]n appropriate circumstances, opinions from State agency medical and
> psychological consultants and other program physicians and psychologists may be
> entitled to greater weight than the opinions of treating or examining sources,"
> Social Security Ruling 96–6p, 1996 WL 374180 at *3. Such was the case here.

Pacheco v. Colvin, 83 F. Supp.3d 1157, 1164 (D. Colo. 2015). If a non-examining opinion is better

supported, more consistent with evidence, or authored by a specialist, then it may be entitled to

greater weight than examining or treating opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c); 20

C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (Non-examining consultants are "highly

qualified…medical specialists who are also experts in Social Security disability evaluation."). An

ALJ may reject an examining physician's opinion in favor of a non-examining physician opinion

on the basis of contradictory evidence. See 20 C.F.R. 404.1527(c). Thus, it is unnecessary to test

the credentials of the state agency consultants, as the social security administration has already deemed them experts in the evaluation of the medical issues in disability claims under the Act.

The Eleventh Circuit in addressed a similar issue as the one before this court. In T.R.C. ex rel. Boyd, the Court concluded that notwithstanding the unidentified examiner, there was substantial evidence to support the ALJ decision. "The record contained sufficient evidence including *inter alia*, several medical and other reports from examiners from UAC, Ms. Wisely, Dr. Lowery, Dr. Estock, and another unidentified examiner as well as T.R.C. and her mother's testimony, for the ALJ to make an informed decision. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007)." T.R.C. ex rel. Boyd v. Commissioner, Social Sec. Admin., 553 Fed. App'x. 914 at *919 (11th Cir. 2014) (emphasis added). Similarly, in this case, the ALJ relied on sufficient evidence, including the state agency physicians, identified by their initials.

Plaintiff states the state agency physicians are entitled to the least weight as they did not examine or treat Plaintiff. (Pl. Br. at 3.) State agency physicians are acceptable medical sources whose opinions ALJs are entitled to consider. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider). The ALJ may rely on a state agency consultant if the ALJ explains the basis for the weight given. In this case, the ALJ reviewed the medical record before allocating weight to the state agency physician opinions.

> The claimant alleges she is unable to work due to memory loss, history of a right wrist fracture, and a history of seizures. Although the claimant testified she has memory loss, there are no objective medical records to support this impairment.
>
> In approximately the year 2000, the claimant had a distal radius fracture of her right wrist and hardware was inserted. In 2012, she began to complain of some right wrist pain when visiting her primary care clinic … The claimant changed

primary care physicians on July 1, 2013. At this examination, the claimant reported aching pain from the right wrist to the shoulder which was aggravated by movement. Patrick Kelly, D.O., diagnosed the problem as pain from implanted hardware and he scheduled surgery to remove the hardware on July 18, 2013. After removal of the stiches, the claimant developed an infection at the incision site and underwent a right wrist wound dehiscence on July 31, 2013. There were no additional reports by the claimant to any doctors of any further wrist pain after the wound dehiscence on July 31, 2013 …

The claimant stated she has suffered seizures since she was a child. As far back as February 2011, the claimant reported to her primary care community clinic that her last seizure had been April 2010. She was treated at her primary care community clinic and was prescribed Depakote to keep her seizures under control. Due to the nature of the medication, the claimant was asked to have lab work completed on numerous occasions but did not do so until August 24, 2011. The claimant's next reported seizure was on April 5, 2012 when she presented to the emergency room and was diagnosed with seizure disorder with sub-therapeutic Depakote levels. The claimant was given Depakote and discharged with seizure precautions. She returned to her primary care clinic on April 9, 2012, stating the emergency room physician had increased her Depakote to almost double. This was inaccurate according to the hospital records. She was counseled to take her medications as prescribed. On April 27, 2012, it was noted on her primary medical records that the claimant had a history of seizures while on Depakote due to her admitted poor compliance in the past. A seizure reportedly occurred on April 23, 2013, while the claimant slept. Her boyfriend reportedly observed the seizure. She denied seizure activity while awake …

In making the determination regarding the claimant's residual functional capacity, the [ALJ] adopts the medical opinions of the State agency medical consultants regarding the claimant's abilities to do work-related activities. Additionally, the State agency medical consultants found that the claimant's alleged mental impairments are non-severe. The [ALJ] concurs and gives these opinions great weight …

Although diagnosed with a seizure disorder, the claimant was able to control her seizure activity when she took her medication as prescribed. Her medical records reflect she reported seizures in April 2010, April 2012, and January 2013. No additional seizures were reported by the claimant. In fact, the claimant has not sought treatment from her primary care clinic since 2013 and her last hospital visit was for an unrelated medical issue. It appears when the claimant takes her medication as prescribed, her seizures are under control.

(Tr. 27-30). Thus, the ALJ thoroughly evaluated the medical record to support reliance on the state agency opinions in forming the RFC. The ALJ found Plaintiff had no medical evidence to support memory loss, no further reports of wrist pain, and medication controlled her seizures when taken

as prescribed. Id. In Maestas, the Tenth Circuit further explained the ALJ does not need to link the RFC to specific medical evidence.

> On appeal, [Plaintiff] argues the ALJ erred by failing to properly assess his RFC and failing to link the RFC findings to specific evidence. [Plaintiff] further argues the RFC determination is not supported by substantial evidence.
>
> As discussed more fully below, our review of the record reflects that the ALJ properly considered all of the record evidence in reaching the RFC determination, including specifically discussing [Plaintiff's] application documents, hearing testimony, and medical records. We have explained that the regulations do not require "direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's narrative discussion is sufficient to support the RFC determination.

Maestas v. Colvin, 618 F. App'x 358, 360 (10th Cir. 2015). "The ALJ's decision contains a discussion of the medical evidence he considered in finding that she retained the RFC to perform light work … [O]ur review of the record indicates that the RFC determination is consistent with the medical evidence, and thus, the ALJ's finding is supported by substantial evidence." Parise v. Astrue, 421 F. App'x 786, 788 (10th Cir. 2010). In accordance with Maestas and Parise, substantial evidence supports the ALJ's RFC, based the medical evidence on record.

Plaintiff also states the ALJ erred in selecting only parts of the state agency opinions to apply. (Pl. Br. at 3). Specifically, Plaintiff contends the ALJ failed to include findings of mild difficulties in concentration, persistence, or pace in the RFC, as discussed above. Id. An ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion. See Butler v. Astrue, 410 F. App'x 137, 143 (10th Cir. 2011) (affirming decision where the ALJ gave significant weight to examining physician's functional test results, but gave no weight to examining physician's opinion that the plaintiff could not sustain full-time work); see also Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D. D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); and Smith v.

Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016) (affirming where the ALJ "arrived at an assessment between the two medical opinions without fully embracing either one.").

### 2.     Mental Impairments in the RFC and Dr. Smasal's Opinion

Plaintiff states the ALJ erred in assessing Plaintiff's mental impairments within the RFC. (Pl. Br. at 3). Plaintiff states she was in special education; and she had difficulties with reading, math, and comprehension. Id. She argues Dr. Smasal did not test her reading, math, or comprehension abilities. Id. Plaintiff contends the MoCA test was insufficient to assess her impairments. Id. at 3-4. The ALJ reviewed the MoCA test and Dr. Smasal's opinion.

> The Montreal Cognitive Assessment (MoCA) assesses attention and concentration, executive functions, memory, language, visuo-constructional skills, conceptual thinking, calculations, and orientation. The claimant scored 12/30; however, Dr. Smasal found the claimant's effort on the MoCA to be poor. Therefore, Dr. Smasal found the obtained score may underestimate the claimant's true ability. The claimant's affect fell within normal limits. Her thought processes were linear and logical. Dr. Smasal's impressions were that the claimant is able to perform some work-related mental activities such as the ability to understand and remember. Her diagnostic impression was amphetamine abuse, reported to be in sustained full. The [ALJ] concurs with Dr. Smasal and give her impressions substantial weight.

(Tr. 25). Thus, the ALJ found the record did not establish severe mental impairments, which would interfere with work activities. In Barrett, the Tenth Circuit upheld the ALJ's decision finding the plaintiff did not establish mental impairments had more than a minimal effect on work activity.

> Mr. Barrett also asserts that there was clearly de minimis proof in the record supporting a conclusion by the ALJ at step two that his mental impairments were severe. If we construe this argument as a contention that the ALJ's finding regarding his RFC at step four was therefore not supported by substantial evidence, his contention still lacks merit. The ALJ found that Mr. Barrett's mental impairments were not severe and therefore included no mental limitation in his RFC …

> Mr. Barrett contends that the medical evidence in the record in this case was inconclusive. He points to the following evidence in support of his argument: his allegation of disability based on a combination of physical and mental impairments; his history of a suicide attempt and special education classes 20 years before the adjudicated period; his history of taking anti-depressant medication; his testimony

that his wife filled out agency forms on his behalf—based on information he provided to her regarding his daily activities, his medical and psychological impairments, and his work history—because he did not understand the forms; his wife's general comment in one of these forms that claimant had difficulty following oral and written instructions; and his testimony about having co-workers read written instructions to him at his job at Denny's. Mr. Barrett argues that "[a]ll of the foregoing facts triggered the ALJ's duty to develop the record in this case by obtaining a consultative psychological examination ... to clarify the extent of his mental impairments…"

In response to claimant's summary of the record, the Commissioner points out that Mr. Barrett did not seek medical treatment for any impairment until after he applied for disability benefits and did not initially report any symptoms of a mental impairment; his medication was effective in controlling his depression during the adjudicated period and his wife described him as only slightly depressed; his PCP never referred him for a mental health evaluation; the consultative physician who examined claimant with respect to his physical impairment did not observe any mental difficulties during the examination; Dr. Chiang found in her PRT assessment that claimant's depression resulted in only mild ratings in mental function areas and was therefore not severe; Mr. Barrett reported daily activities involving some level of concentration and comprehension, including watching television, playing video games, reading gaming magazines, and using the computer; he continued to work part time during the adjudicated period; his wife indicated that he could pay bills, count change, and handle bank accounts; and he testified that he was able to follow oral instructions at work.

Barrett v. Astrue, 340 F. App'x 481, 485-87 (10th Cir. 2009). In this case, Plaintiff has a similar record to the plaintiff in Barrett. As in Barrett, the ALJ found Plaintiff's mental impairments were not severe, and therefore, the ALJ included no mental limitation in the RFC. (Tr. 30). In addition, Plaintiff alleges disability based on a combination of physical and mental impairments and alleges a history of special education classes. (Pl. Br. at 3-4). The state agency physician also only found mild ratings in mental function areas and was not severe. (Tr. 29-30). Finally, Plaintiff reported daily activities involving some level of concentration and comprehension, including playing on her Wii, crocheting, playing bingo with other residents at her apartment complex, and attending baseball games. (Tr. 25).

Plaintiff contends the ALJ omitted critical parts of Dr. Smasal's opinion, including findings of impairments and a difficulty adapting to work based on the seizure disorder. (Pl. Br. at 4). The

ALJ reviewed Dr. Smasal's opinion and Plaintiff's score on the MoCA. (Tr. 25). However, the ALJ noted Dr. Smasal found the claimant's effort on the MoCA to be poor, and the score may have underestimated Plaintiff's ability. Id. Dr. Smasal further noted Plaintiff's affect fell within normal limits, and her thought processes were linear and logical. Id. Dr. Smasal concluded Plaintiff was able to perform some work-related mental activities such as the ability to understand and remember. Id. The ALJ concurred with Dr. Smasal and gave the impressions substantial weight. Id. As for Dr. Smasal's finding of a difficulty in adapting to work based on the seizure disorder, the ALJ found separately Plaintiff was able to control her seizure activity when she took her medication as prescribed. (Tr. 30). The ALJ noted Plaintiff's medical records reflected she reported seizures in April 2010, April 2012, and January 2013. Id. Since no additional seizures were reported by Plaintiff, the ALJ concluded when Plaintiff takes her medication as prescribed, her seizures are under control. (Tr. 30). See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting the ALJ's citation to well-supported medical evidence, satisfies the requirement that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.) Harris v. Berryhill, No. CIV-16-1054-STE, 2017 WL 2062999, at *8 (W.D. Okla. May 12, 2017). "[T]he … ALJ's RFC determination is … supported by substantial evidence, including … two examining sources' findings on consultative physical and mental exams; plaintiff's reported daily activities and statements to treatment providers; and the state-agency medical reviewers' opinions, which were in certain respects less restrictive than the ALJ's RFC determination." Smallwood v. Colvin, No. CIV-15-770-CG, 2016 WL 5717738, at *7 (W.D. Okla. Sept. 30, 2016). Similarly, in this case, the medical record, daily activities, and state agency opinions provide substantial evidence for the ALJ's decision.

**C.      "Severe" Physical Impairments and the RFC**

Plaintiff states the ALJ erred in assessing the "severe" physical impairments within the RFC. (Pl. Br. at 4). The ALJ found Plaintiff had the following "severe" impairments: history of a right wrist fracture and history of a seizure disorder. (Tr. 24). As delineated above, the ALJ reviewed the medical record regarding Plaintiff's severe impairments. (Tr. 27-30). From the review, the ALJ found Plaintiff had no further reports of wrist pain following July 31, 2013. (Tr. 27). The ALJ also detailed Plaintiff's history of seizures and found she was able to control the seizures when she took her medication as prescribed. (Tr. 30). Her medical records reflect she reported seizures in April 2010, April 2012, and January 2013. Id. No additional seizures were reported by Plaintiff, and she has not sought treatment from her primary care clinic since 2013 and her last hospital visit was for an unrelated medical issue. Id. The ALJ found when Plaintiff takes her medication as prescribed, her seizures are under control. Id. Moreover, the ALJ included a provision in the RFC for Plaintiff to avoid hazards such as heights and open machinery. (Tr. 27). As discussed above, substantial evidence supports the ALJ's RFC finding.

**D.      Other Medical Problems and the RFC**

Plaintiff alleges the ALJ erred in failing to account for Plaintiff's various other medical problems within the RFC. (Pl. Br. at 6). Plaintiff states she has migraines, multiple mid thoracic compression fractures, anemia, obesity, and positional vertigo. Id. "There is obviously no requirement that the ALJ reference everything in the administrative record." Wilson v. Astrue, 602 F.3d 1136, 1148 (10th Cir. 2010). Plaintiff did not allege disability due to these conditions in her disability application. (Tr. 207). In addition, neither Plaintiff nor her attorney alleged any limitations due to these impairments at the administrative hearing. (Tr. 40-41 (Plaintiff's attorney's opening statement), Tr. 41-57 (Plaintiff's testimony)). See Cowan v. Astrue, 552 F.3d 1182, 1188

(10th Cir. 2008) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."). Moreover, the treatment notes do not identify any work-related limitation that would be relevant in assessing the RFC. See Fulton v. Colvin, 631 F. App'x 498, 501 (10th Cir. 2015) ("[T]he diagnoses by themselves are not significantly probative evidence the ALJ had to reject in order to find Mr. Fulton was not disabled, and therefore the ALJ did not need to discuss them.").

**E.      Credibility Analysis**

**1.      Treatment History**

Plaintiff states the ALJ erred in assessing Plaintiff's credibility, especially with regard to the history of substance abuse and seizures. (Pl. Br. at 6-7). The ALJ reviewed the record to evaluate Plaintiff's credibility.

> The claimant testified she lives alone with her dog and is able to care for both their needs. She prepares meals and cleans the house. The claimant also goes a friend's house and takes care of his children, ages 3 and 11, whenever he is at work. The claimant further testified she has seizures once a week, but at her attorney's prompting, she corrected herself to say only a couple times a year do the seizures occur. The claimant has a weak work history and a history of substance abuse, which go to her credibility. Additionally, her testimony that she was confused about how often she reportedly has a seizure changed to she couldn't remember how often she had a seizure. This also brings into question the credibility of all her testimony. Finally, when she sought treatment to deal with the death of family member, she denied drug use but had admitted to meth use just a few weeks prior during her consultative examination.

(Tr. 29). Thus, it was within the ALJ's province to consider Plaintiff's uncertainty as to her seizure history. The ALJ may also consider Plaintiff's differing reports to medical providers as to substance abuse history. "The ALJ did not err in taking into account [plaintiff's] misrepresentations regarding his alcohol use in evaluating his overall credibility. See Wilson, 602 F.3d at 1146 (affirming ALJ properly took into account claimant's various discrepancies regarding

substance abuse, including misrepresentations as to the use of alcohol and cessation of drug use, when considering claimant's overall credibility). See also Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide.")

Although recently the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult ...

Soc. Sec. Ruling ("SSR") 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)).[3]

> At step one of the process, "[a]n individual's symptoms ... will not be found to affect the ability to perform work-related activities for an adult ... unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility

---

[3] SSR 16-3P was issued after the date of the ALJ's decision in this case. However, the two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., Keyes-Zachary, 695 F.3d at 1166-67.

that are peculiarly within the judgment of the ALJ ... and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan, 552 F.3d at 1190 (quoting Kepler, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id.

Recently in Simon, the Western District of Oklahoma considered the issue of credibility and a history of substance abuse.

Subsequent to the ALJ's decision, the Social Security Administration promulgated Social Security Ruling 16-3p (effective March 28, 2016):

Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.] SSR 16-3p at *10.

The ALJ made ... reference to Plaintiff's former substance abuse that could be viewed as impacting his view of Plaintiff's credibility: [Plaintiff] was quite vague in answering questions about her past and current substance use, contradicting herself during her testimony. The Court notes the ALJ did not have the benefit of SSR 16-3p when he wrote the unfavorable decision. More importantly, however, is the fact that the ALJ, as demonstrated above, primarily relied on the proper factors in assessing Plaintiff's credibility. Thus, at most, the ALJ's consideration of Plaintiff's inconsistent testimony was harmless error. See Fischer–Ross v. Barnhart, 431 F.3d 729, 733–34 (10th Cir. 2005) (recognizing that harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

<u>Simon v. Comm'r of Soc. Sec. Admin.</u>, No. CIV-16-480-STE, 2017 WL 1194515, at *7–8 (W.D. Okla. Mar. 30, 2017). Similarly, the ALJ considered several other factors in determining the credibility of Plaintiff's statements regarding her limitations, including she lives alone and watches a friend's children at his house while he is at work. Thus, the ALJ did not err in considering Plaintiff's substance abuse history as one factor among several in evaluating Plaintiff's statements about her symptoms. However, even assuming the ALJ erred by considering the substance abuse history, the error was harmless. <u>Fischer–Ross</u>, 431 F.3d at 733-34. Substantial evidence supports the ALJ's decision.

**F.      Steps Four and Five Finding of Past Relevant Work and Other Work**

Plaintiff states the ALJ erred by finding Plaintiff could perform her past relevant work as a daycare worker and waitress or other work as a dietary aide and dishwasher. (Pl. Br. at 7-9). Plaintiff states she cannot do those jobs as she must avoid hazards and environmental conditions. <u>Id.</u> However, none of these jobs involve any exposure to moving mechanical parts, electric shock, high exposed places, radiation, explosive, or toxic caustic chemicals. DOT No. 359.677-018, 1991 WL 672970 (daycare worker); DOT No. 311.477-030, 1991 WL 672688 (waitress); DOT No. 319.677-014, 1991 WL 672771 (dietary aide); DOT 318.687-010, 1991 WL 672755 (dishwasher).

Plaintiff further claims she cannot work as a daycare worker or waitress or perform these jobs because it would be unsafe for her do to so. (Pl. Br. at 7). However, Plaintiff has cared for a friend's two children at his home while he was a work. (Tr. 53). Plaintiff states it would be dangerous to ladle hot soup or use sharp utensils, but she lives by herself, takes care of her home, cooks meals for herself, and crochets. (Tr. 499-500). Plaintiff also claims she cannot work as a dietary aid or dishwasher as these jobs involve frequent exposure to heat, wetness, and noise, but there is no medical evidence to support this allegation.

Plaintiff alleges "other environmental limitations" may conflict with her seizure restrictions, and thus her ability to perform her past relevant work and other work as a dishwasher. (Pl. Br. at 7-9). However, "other environmental conditions" is a catch-all term for conditions not previously described, which may include:

> such settings as demolishing parts of buildings to reach and combat fires and rescue persons endangered by fire and smoke; mining ore or coal underground; patrolling assigned beat to prevent crime or disturbance of peace and being subjected to bodily injury or death from law violators; diving in ocean and being subjected to bends and other conditions associated with high water pressure and oxygen deprivation; patrolling ski slopes prior to allowing public use and being exposed to danger of avalanches.

See Whitewolf v. Colvin, 2015 WL 2345500, at *7-8 (W.D. Okla. May 14, 2015). Here, as in the Whitewolf, Plaintiff does not suggest that any of these environmental conditions would exist in the Plaintiff's past work or the other work identified by the vocational expert ("VE"). There is no evidence the DOT's job information for this position conflicts with the VE's testimony. Id. at *9. See SSR 00-4p, 2000 'WL 1898704, at *2 (noting the ALJ must resolve any apparent conflict between VE / vocational specialist ("VS") evidence and the DOT); Segovia v. Astrue, 226 F. App'x 801, 804 (10th Cir. 2007) ("[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.").

Plaintiff contends she cannot do the jobs as she should not be driving, but there is no medical evidence stating Plaintiff cannot drive. (Pl. Br. at 9). Plaintiff reported she was able to drive to Dr. Smasal, and the ALJ noted Plaintiff was able to drive in the decision. (Tr. 25).

Finally, Plaintiff alleges additional limitations the ALJ should have included in the RFC, including rubber matting, using a desk chair with armrests, and using an elevator. (Pl. Br. at 8 & n.3). However, Plaintiff's argument is based on a drug manufacturer's website, and there is no evidence Plaintiff actually needed to take these precautions. Moreover, at the administrative

hearing, Plaintiff's attorney did not ask the vocational expert about the effect of any additional environmental limitations. (Tr. 62-64).

Thus, the record provided substantial evidence to support the ALJ's decision. The District Court in Kansas has noted it is not the reviewing court's position to reweigh the evidence.

> In sum, the court is not persuaded by the merits of the plaintiff's arguments. The ALJ's finding that the plaintiff did not have two "marked" or one "extreme" functional impairment is supported by substantial evidence, that is, evidence which reasonable minds might accept as adequate to support the conclusions. It is not this court's right to reweigh the evidence or substitute its judgment. Consequently, the decision of the Commissioner is affirmed.

Beaver v. Astrue, 2010 WL 2949746, at *8 (D. Kan. July 22, 2010). Similarly, the Tenth Circuit explained the standard for substantial evidence.

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Therefore, the record provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written

objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than August 17, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on August 3, 2017.

**Gerald B. Cohn**
**United States Magistrate Judge**