## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

MARGARET SUE HITCHCOCK,     )
                            )
              Plaintiff,     )     Case No. 16-CV-378-JED-GBC
v.                        )
                            )
NANCY A. BERRYHILL,     )
Acting Commissioner of the Social     )
Security Administration,     )
                            )
             Defendant.     )

## OPINION AND ORDER

Before the Court is the Report & Recommendation ("R&R") (Doc. 18) of United States Magistrate Judge Gerald B. Cohn on review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying the Plaintiff, Margaret Sue Hitchcock, disability benefits. Judge Cohn recommends that the Court affirm the Commissioner's decision finding Plaintiff not disabled. Mr. Vann filed a timely Objection (Doc. 19) to the R&R, and he requests that the Court "reverse and/or remand this matter for proper consideration." (Doc. 19 at 7). Reviewing the Objection de novo, the Court has considered the Administrative Record ("Record") (Doc. 12), the parties' briefs, the R&R, Plaintiff's Objection, and the Commissioner's Response (Doc. 20), and concludes that the Commissioner's determination should be affirmed and the R&R should be accepted.

## I. Background

On June 6, 2013, Plaintiff filed claims for disability insurance benefits and supplemental security income, alleging disability beginning December 1, 2012. (R. 22). These claims were denied initially and upon reconsideration. (*Id*.). A hearing before an administrative law judge

("ALJ") was held on September 15, 2014, and the ALJ issued a decision finding Plaintiff not disabled on November 13, 2014.  (R. 22, 32).

In his decision, the ALJ found that Plaintiff had two severe impairments:  history of a right wrist fracture and history of a seizure disorder.  (R. 24).  He determined that Plaintiff's medically determinable mental impairments of anxiety and a history of substance abuse, considered singly and in combination, were non-severe.  (R. 25).  In analyzing Plaintiff's mental impairments, the ALJ applied the "special technique" required by the regulations and rated Plaintiff's limitations in "four broad functional areas."  *See Mushero v. Astrue*, 384 F. App'x 693, 694 (10th Cir. 2010) (unpublished) (citing 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2)).  The ALJ found that Plaintiff had mild limitations in two functional areas: daily living and concentration, persistence, or pace.  (R. 25-26).  He found that she had no limitation in social functioning and that she had experienced no episodes of decompensation of extended duration.  (*Id.*).  Although Plaintiff testified to memory loss, the ALJ found no objective evidence in the medical records to support this impairment.  (R. 26).

As Plaintiff did not allege that any particular impairment or combination of impairments met or medically equaled the severity of a listed impairment, the ALJ proceeded to the next step of the evaluative process.  (R. 26).  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work.  He found that she could lift 50 pounds occasionally and 25 pounds frequently, stand/walk about 6 hours in an 8-hour work day, and sit about 6 hours in an 8-hour work day, but that she should avoid hazards such as heights and open machinery.  (R. 26-27).  As a result of this RFC determination, the ALJ concluded that Plaintiff was capable of performing her past work as a day care worker or waitress.  (R. 30).  Alternatively, the ALJ found

that she could perform other jobs in the national economy, such as dishwasher or dietary aide. (R. 31).

Plaintiff objects to the R&R on several grounds, which will be addressed below.

## II.     Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is 'more than a scintilla, but less than a preponderance.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Martinez v. Barnhart,* 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## III.    Specific Objections

### A.     Mild Difficulties in Concentration, Persistence, or Pace

Plaintiff first contends that the ALJ erred by allegedly failing to address Plaintiff's mild limitations in daily living and concentration, persistence, or pace in his RFC analysis and hypothetical to the vocational expert ("VE"). (Doc. 19 at 1).

"[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). Yet, this Court finds that the ALJ in this case did not disregard Plaintiff's mental impairments after finding them non-severe at step two. Instead, at step four, the ALJ specifically discussed the intensity, persistence, and limiting effects of the symptoms caused by Plaintiff's mental impairments. (R. 29). He noted Plaintiff's testimony that she lives alone with her dog and is able to care for their needs. (*Id.*; *see* R. 42). He noted that she takes care of her friend's children, ages 3 and 11, when he is at work. (R. 29; *see* R. 53). He also noted Plaintiff's mother's assertions that Plaintiff has no mental problems, that she can pay attention a regular amount of time, and that she crochets, spends time with others, shops, counts change, has no trouble with personal care, and does not need reminders for medication. (R. 29; *see* R. 222-29). The ALJ also gave great weight to the state agency medical consultants' opinions regarding the non-severity of Plaintiff's mental impairments. (R. 29-30; *see* R. 99-100, 111-12).

The Court finds this discussion "satisfied the ALJ's obligation at step four to provide a more detailed assessment of [Plaintiff's] ability to complete various job functions as part of determining her RFC." *Wells*, 727 F.3d at 1069. Moreover, "[t]he ALJ's finding of a moderate [or mild] limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). The Court agrees with the R&R in finding no error here.

**B.      Evaluation of Consulting Physicians**

Plaintiff's second objection concerns the ALJ giving great weight to the opinions of the non-examining state agency medical consultants, despite them being identified only by their initials in the records.

The qualifications of these physicians are not unknown, as the Plaintiff suggests.  The first consultant is identified as "SV, MD 37" – which denotes that Dr. SV is a medical doctor with a specialty in psychiatry.  *See* Social Security Administration Program Operations Manual System (POMS) § 24501.004(B).  The second consultant is identified as "KDM, PhD 38," indicating that Dr. KDM has a Ph.D. with a specialty in psychology.  *Id*.  Furthermore, substantial evidence in the Record—including the Plaintiff's and her mother's own statements, as noted by the ALJ—is consistent with the medical consultants' opinions.  The Court finds that the ALJ thoroughly evaluated the record to support reliance on these opinions and, thus, did not err in giving these opinions great weight.

The Plaintiff also contends that the ALJ erred in adopting the state medical consultants' conclusions regarding the non-severity of Plaintiff's impairments without including their findings of mild difficulties in concentration, persistence, or pace in the RFC.  As discussed above, findings regarding limitations in the four broad functional areas utilized when applying the "special technique" at step two do not necessarily translate to a work-related limitation in the RFC determination.  The undersigned agrees with Judge Cohn in finding no error here.

**C.      Dr. Smasal's Opinion**

The Plaintiff contends that the ALJ erred in omitting parts of Dr. Smasal's opinion, including the observations that Plaintiff's auditory recall and recognition were impaired, that her attention to auditory details was impaired, and that her insight was limited.  (Doc. 19 at 3).  These

first two observations were part of the Montreal Cognitive Assessment ("MoCA"). (R. 490-91). However, as noted by the ALJ, (R. 25), Dr. Smasal opined that Plaintiff's effort on the MoCA was "poor" and that her score "may underestimate" her true ability. (R. 492). Dr. Smasal's observation regarding Plaintiff's insight was that her "insight into presenting complaints was judged to be limited. She tends to assign blame to others in her life for her problems, overlooking obvious times when she was directly at fault." (*Id*.). This observation is not sufficiently probative to warrant inclusion in the ALJ's decision. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence . . . . Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The ALJ also omitted from his decision Dr. Smasal's opinion that Plaintiff "can be expected to experience difficulty with concentration, persisting with difficult tasks, social interact[ion] and adapting to the demands of a work environment should her seizure disorder be sufficiently disruptive." (R. 492). Yet, because the ALJ determined that Plaintiff "was able to control her seizure activity when she took her medication as prescribed," it was unnecessary for him to consider this opinion. The Court agrees with Judge Cohn in finding no error here.

### D. Physical Impairments

Plaintiff also contends that the ALJ erred in including no limitations as to Plaintiff's right wrist fracture, despite classifying it as a "severe" impairment. Upon review of the Record, the Court finds no error. First, the Court notes that the ALJ limited Plaintiff to medium work. (R. 26). Second, the ALJ outlined the history of Plaintiff's wrist problem—starting with a fracture and the insertion of hardware in approximately 2000, up until a post-surgical infection in July 2013. (R. 27). As noted by the ALJ, there were no additional reports by Plaintiff to any doctors

of any further wrist pain after July 2013.  The Court finds that substantial evidence supports a conclusion that Plaintiff's right wrist fracture no longer causes physical limitations beyond the ALJ's RFC determination.  Any error in finding the wrist fracture to be a "severe" impairment at step two is harmless, as the ALJ "reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

Plaintiff also contends that the ALJ failed to adequately consider her seizure disorder.  She states that, contrary to the ALJ's conclusion, her seizures are not "under control" when she takes her medication.  The Court finds that the ALJ's conclusion is supported by substantial evidence, although the ALJ's decision failed to mention her latest reported seizure.  (*See* R. 28-29; Doc. 20 at 4 n.2).[1]

The first instance of a seizure mentioned in the Record occurred in April 2010 and was "caused by having been without medication."  (R. 446).  In April 2012, Plaintiff reported having four seizures in one day.  (R. 294).  The treating physician diagnosed her with subtherapeutic levels of her anti-seizure medication (valproic acid or "Depakote").  (R. 295).  In January 2013, Plaintiff reported having a seizure, and her valproic acid level was in the therapeutic range.  (R. 302-03).  After that, there were two more reported seizures:  in April 2013 and in September 2014.  It is not clear from the medical records whether Plaintiff's valproic acid level was measured in April 2013, though the treating physician noted that he provided "Patient education about the proper use of medications."  (R. 376-79).  When Plaintiff reported her most recent seizure in September 2014, she had admittedly been off her medications for days.  (R. 532).  The Court also notes that

---

[1] In his R&R, Judge Cohn states that Plaintiff's medical records "reflect she reported seizures in April 2010, April 2012, and January 2013" and that she reported "[n]o additional seizures."  (Doc. 18 at 14).  This is an incorrect summary of her medical records, as explained herein.

Plaintiff's counsel stated at the administrative hearing that her seizure disorder is "mostly controlled by medication." (R. 40). With only one reported instance over the course of several years of a seizure occurring when Plaintiff's valproic acid level was determined to be in the therapeutic range, the Court finds that the ALJ's conclusion regarding Plaintiff's seizure disorder is supported by substantial evidence.

### E.    Other Medical Problems

The Plaintiff contends that the ALJ erred in failing to consider her migraines, obesity, multiple mid thoracic compression fractures, anemia, lightheadedness, and positional vertigo. However, Plaintiff did not list these conditions in her disability application (R. 207), and neither she nor her counsel mentioned them during the administrative hearing. (R. 38-65). As noted in the R&R, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claim are adequately explored." *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Furthermore, Plaintiff fails to point to any medical opinion regarding the functional limitations, if any, that these conditions imposed. *See Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (unpublished). The Court finds that "the diagnoses by themselves are not significantly probative evidence the ALJ had to reject in order to find [Plaintiff] was not disabled, and therefore the ALJ did not need to discuss them." *Id.*

### F.    Steps Four and Five

Medical notes from Plaintiff's January 11, 2012, visit to Morton Comprehensive Health Services provide that she should drive and not engage in "risky activities, including climbing lad[d]er[s] or operating machinery and similar activities." (R. 422). Accordingly, the ALJ

included in his RFC assessment that Plaintiff "should avoid hazards such as heights and open machinery." (R. 27).

Plaintiff argues that avoiding risky activities precludes her from performing her past relevant work as a daycare worker and waitress. However, even assuming Plaintiff could not perform these past jobs, the ALJ found that she could work as a dishwasher or dietary aide. (R. 30-31). Plaintiff contends that she cannot perform these jobs, either. She argues that the jobs of dishwasher and dietary aide would require exposure to environmental conditions such as extreme heat, extreme cold, wetness/humidity, and loud noise. (Doc. 19 at 6). Yet, there is no evidence in the Record suggesting that she cannot be exposed to these conditions. She also contends that the ALJ's prelusion of hazards and the fact that she should not be driving[2] prevents her from operating a dishwashing machine, burnishing machine, chemical dip, buffing wheel, handtrucks, and peeling machines, as required by the job of dishwasher. *See* DOT 318.687-010 (1991 WL 672755). Even if the Court assumes such tasks would conflict with Plaintiff's need to avoid hazards and open machinery, the Court still finds that the Administrator has met her burden to demonstrate that Plaintiff is able to perform other work (i.e., dietary aide).

## IV. Conclusion

Having found no reversible error in the ALJ's decision, upon concluding that the ALJ applied the correct legal standards and the decision is supported by substantial record evidence, and agreeing with Judge Cohn's R&R, the Court overrules Plaintiff's Objection (Doc. 19). Accordingly, the Court **accepts** the R&R (Doc. 18) with two corrections. The following sentence on page 19 of the R&R should be deleted: "Plaintiff contends she cannot do the jobs as she should

---

[2] Although the R&R states that there is no medical evidence showing that Plaintiff cannot drive, this Court notes that Plaintiff's treating nurse practitioner "stressed" to her not to drive. (R. 422).

not be driving, but there is no medical evidence stating Plaintiff cannot drive." Also, the sentence on page 13 listing the dates of Plaintiff's reported seizures should be edited to include April 2013 and September 2014. The Commissioner's decision is hereby **affirmed**. A separate Judgment will be entered forthwith.

      **DATED** this 30th day of March, 2018**.**

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE